IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

DOUGLAS PFENNING,                               :

                Plaintiff       :    Case No. 3:14-cv-471

    vs.                                         :    District Judge Thomas M. Rose

LIBERTY LIFE ASSURANCE COMPANY,                 :
OF BOSTON
                                            :
                Defendant.

_____

**DECISION AND ORDER GRANTING PLAINTIFF'S MOTION
FOR ATTORNEY'S FEES AND COSTS. DOC. 33.**
_____

This matter is before the Court on Plaintiff Douglas Pfenning's Motion for an Award of Attorney's Fees and Costs. Doc. 33.

On December 31, 2014, Plaintiff Douglas Pfenning filed his complaint under §502(a)(1)(B) of the Employee Retirement Income Security Act of 1972, 29 U.S.C. § 1132(a)(1)(B), accusing Defendant Liberty Life Assurance Company of Boston of violating his rights to disability benefits and demanding that Liberty account for past benefits and pay future benefits. Plaintiff argued that he was entitled to *de novo* review pursuant to the Plan's choice of law provision which identified California law as governing the Plan. Defendants initially argued that an arbitrary and capricious standard of review should be used. On December 28, 2015, the Court ruled against Plaintiff on the standard of review and on the merits of the case. Plaintiff appealed.

1

During Plaintiff's oral argument, the appellate panel appeared prepared to summarily affirm. Then, Liberty Life took the podium and stipulated that Pfenning should have received *de novo* review in 2014. The Sixth Circuit Court of Appeals remanded the case to this Court to reevaluate the claim under the *de novo* standard of review. On June 28, 2017, the Court awarded Plaintiff benefits. Doc. 31. Plaintiff now moves the Court for an award of fees.

**I.    Background**

In an ERISA action by a plan participant, the Court has discretion to award reasonable attorney's fees and costs. 29 U.S.C. § 1132(g)(1). Analysis of whether attorney's fees should be awarded in an ERISA case proceeds in two steps. First, the Court assesses whether the Plaintiff has obtained "some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 254 (2010). If the Court concludes that Plaintiff has achieved some success on the merits, the Court then applies a five factor test set out in *Secretary of Dep't of Labor v. King*, 775 F. 2d 666 (6th Cir. 1985). See *McKay v. Reliance Standard Life Ins. Co.*, 428 Fed. App'x 537, 545 (6th Cir. 2011). Even achieving a remand has been found to be, "some success on the merits." See *Hardt* at 2159; *McKay* at 547. Thus, Pfenning has achieved some success on the merits.

When an ERISA plaintiff has achieved some success on the merits, an award of attorney fees is discretionary. In exercising its discretion to award fees, the Sixth Circuit has directed district courts to consider the following factors: 1. The degree of the opposing party's culpability or bad faith; 2. The opposing party's ability to satisfy an award of attorney's fees; 3. The deterrent effect of an award on other persons under similar circumstances; 4. Whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an

ERISA plan or resolve significant legal questions regarding ERISA; and 5. The relative merits of the parties' positions. *King*, 775 F 2d at 669. Each of these factors is considered, in turn.

### 1. The degree of culpability

Liberty Life's actions in this case demonstrate a degree of culpability. "Where a plan administrator engages in an inadequate review of a beneficiary's claim or otherwise acts improperly in denying benefits," the culpability aspect of the *King* test is satisfied. *Shelby County Health Care Corp v. Majestic Star Casino*, 581 F 3d 355, 377 (6th Cir. 2009); see also *Moon v. Unum Provident Corp.*, 461 F 3d 639, 643-44 (6th Cir. 2006) (concluding that Unum was culpable under *King* because, *inter alia*, the physician on whose opinion the plan's fiduciaries relied never examined the claimant; Unum's review of the administrative record was highly selective; and the physician reviewer upon whose judgment the decision turned ignored substantial evidence in the record showing that the claimant was disabled). Liberty Life's conduct in this case reflects an uneven execution of its duties as claim administrator for the Farmers Group, Inc., LTD Plan.

Liberty Life argued that Pfenning was not entitled to *de novo* review (Docs. 13 & 15). The Court's Order dated December 23, 2015, agreed with Liberty Life that the arbitrary and capricious standard of review should be applied. While Liberty Life argued against *de novo* review in this Court, it argued the opposite for another Farmers' employee seeking long-term disability in the Western District of Michigan. In a November 2015 filing in *Sikkema v. Liberty*, Case No. 1:15-cv-494, (W.D. Mich., Sept. 6, 2016), counsel for Liberty Life stipulated to *de novo* review under the same plan. Despite stipulating to *de novo* review in November 2015, Liberty Life continued to argue in favor of arbitrary and capricious in its Sixth Circuit brief in this case.

Given the date of the *Sikkema* stipulation, Liberty Life could have notified this Court of its change of heart before this Court issued its ruling on December 28, 2015. This factor demonstrates a degree of culpability and bad faith and weighs in favor of granting fees to Plaintiff.

**2. Ability to pay fees**

Liberty Life Assurance Company of Boston is part of Liberty Mutual Holding Company, Inc. According to Liberty Mutual Holding Company, Inc.'s website (www.libertymutualgroup.com), Liberty Mutual Holding Company, Inc., for the year 2015, had total net income of $5.4 million, and total equity of $19.241 billion. For 2016, the holding company reported $125.6 billion of assets and $38.3 billion of revenues. Liberty Life can pay the fee award requested. This factor also favors an award of fees.

**3. Deterrent effect of a fee award**

The third factor is "whether the fee award will have a deterrent effect on other plan administrators." *Bowers* at *4, citing *Gaeth v. Hartford Life Ins. Co.*, 538 F 3d 524, 532 (6th Cir. 2008). "The deterrent effect on other plan administrators is likely to have more significance in a case where the defendant is highly culpable–where 'deliberate misconduct is in the offing,' rather than when the plan administrator has just made an 'honest mistake.'" *Bowers*, ibid., citing *Foltice v. Guardsman Products, Inc.*, 98 F 3d 933, 937 (6th Cir. 1996); see also *Holler*, 737 F. Supp. 2d at 906 ("Plaintiff's fees will warn plan administrators that 'before terminating a plan participant's benefits, a plan administrator should ensure that the opinions upon which they rely to make their decisions are based on a thorough review of the administrative record.'"); *Potter*, 2011 WL 4852334 at *8 ("A fee award may deter other plan administrators where the facts of the case 'are not so unique that they fail to serve any deterrence value to other insurance

companies under similar circumstances,' and where the court's opinion 'articulated important principles that all plan administrators should heed.'") (quoting *Gaeth*, 538 F 3d at 532).  "An award of fees in this case further confirms that insurers must perform meaningful claim reviews. 'If the only consequence of an arbitrary denial of benefits is the chance of being sued and a possibility of reinstatement of benefits at some future date, insurance companies, with this strong conflict of interest, will have little incentive to adhere to their fiduciary obligations.'" *Niswonger*, 2011 WL 4543929 at *5, quoting *Plummer v. Hartford Life Ins. Co.*, Case No. C-3-06-94, 2007 WL 838926, at *2 (S.D. Ohio, March 15, 2007).

Liberty Life advocated for a standard of review that was different from the one mandated by California law (and the insurance policy) and compounded the problem by adopting inconsistent positions for persons who are beneficiaries under the same plan.  In order for ERISA to achieve its statutory promise of efficiency, predictability and uniformity, claim administrators like Liberty Life must consider the effect of the actions it takes. See, *Conkright v. Frommert*, 559 US 506 (2010).  According to the Farmers Insurance website, (www.Farmers.com/about-us), Farmers employs 21,000 people across the country (See Exhibit C).  Each of those 21,000 people are part of a class of employees under the Plan insured by Liberty Life.  Administering plans consistently, predictably and uniformly is a vital feature of ERISA.

The deterrent effect of a fee award must be calculated prospectively, but it is reasonable to conclude that insurers and plan administrators take notice of these awards.  An award of fees re-orients an errant plan insurer to the idea that they perform a "fiduciary function" for claim beneficiaries and that they shall avoid activities that "are below market standards." See *Glenn v. Metlife*, 461 F 3d 660 (6th Cir. 2006); see also, *McKay v. Reliance Standard*, 428 Fed. App'x 537 (6th Cir. June 27, 2011).

Choice of law provisions are currently a concern in ERISA plans. Some choice of law provisions embrace a specific state law which occasionally bans discretionary language in group policies. States like California, Illinois and Texas, ban discretionary language in group disability policies. Thus, an ERISA plan administrator must be familiar with many individual state statutes which can modify the standard of review. See, e.g., *Granger v. Life Ins. Co. of North America*, Case No. 6:14-cv-1820, (M.D. Fla., May 26, 2016). The United States Supreme Court and several appellate courts have held that statutes which eliminate discretion are saved from ERISA preemption. See *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355 (2002), and more recently *Fontaine v. Metropolitan Life Ins. Co.*, 800 F. 3d 883 (7th Cir., 2015). This development is relevant to claim administrators who administer benefits to employees residing in multiple states. Thus, prospectively, an award of fees is likely to have an impact by encouraging plan administrators to seek consistency in their approach.

Prospectively, other plan administrators might be more careful to avoid litigating against claimant for years before stipulating to a standard of review that favors the claimant or rearranging the actual occupational duties performed by the claimant in favor of undefined standards. An award of fees would emphasize to multistate plan administrators the idea that all members of the Plan should be treated equally. This factor weighs in favor of attorney's fees to claimant.

**4. Whether a common benefit was sought or significant legal questions resolved**

Pfenning filed this claim for his own benefit. He sought remedies under § 502(a)(1)(b) which allows an individual to seek redress. While Pfenning did not seek to confer a common benefit, he did. By refocusing Liberty Life to the language in its own policy, Pfenning helped ensure uniformity, clarity and predictability for the other 21,000 Farmers Insurance employees

across the United States, all of whom are entitled to *de novo* review. Now Liberty Life is aware that the text of its insurance agreement will not allow a disregard of actual occupational duties performed for Farmers Insurance during what the contract refers to as the "own occupation" period.

**5. The relative merits of the parties' positions**

Plaintiff examined the policy, the administrative record, the governing law provisions and searched the dockets of other states to see what standard of review was being used to adjudicate long-term disability claims under the Farmers LTD Plan. In *King v. Liberty Life Assur. Co. of Boston and Farmers Group, Inc.*, Case No. CV-15-1806-JFW (C.D. Cal. 2015), the Plaintiff and Plan stipulated to *de novo* review because of the operation of California law. In the instant case, Liberty Life fought *de novo* review while it was giving it to Farmers' employees in the Western District of Michigan. See *Sikkema*. Under a *de novo* review, Liberty Life's position lacked merit. Liberty Life's reading allows for the possibility of an employee, thinking he had coverage for disability, being displaced by disability from what Liberty describes as 'own job' but not necessarily own occupation—telling the insured, in effect, "Even though you can't hold your old job, you ought to be able to find one like it, even though you're now partially disabled."

Pfenning's progressive deterioration will likely eventually render him permanently disabled, but he will not have succeeded in holding onto his employment long enough for that disability to result in long-term disability payments. Liberty seeks to deprive him of even short-term payments as well. Thus, this factor weighs in favor of awarded fees.

**II. The Reasonableness of the Fees Requested**

Pfenning seeks attorney's fees as follows: $110,397.50 for attorney time up to the filing of the instant motion; $3,720.00 in additional time for his reply brief, $6,244.50 for paralegal

time; and $905.00 in costs associated with filing fees. Pfenning has submitted evidence to support a finding that the requested fees are reasonable. Liberty Life does not contest this. The Court finds that the hourly rate for legal services is reasonable and that the hours expended were reasonable

### III. Pre-Judgment Interest

Plaintiff's Complaint requested the payment of pre-judgment interest if Plaintiff was successful. The Underlying Benefit Long-Term Disability benefits are reduced by any Social Security award. On July 30, 2015, Pfenning won a claim for SSDI benefits in the amount of $2,119.00 per month. Pfenning's long-term disability payment is $3,755.40 per month. Thus, Pfenning's Liberty Life payments were reduced to $1,636.40 per month. Meaning the amount Liberty Life owes for the own occupation period is: $1,636.40 x 24 months = $39,273.60. Benefits under the "any occupation" standard have not been determined by the Plan Administrator, Liberty Life.[1]

The determination of the prejudgment interest rate is within the sound discretion of the district court. *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 619 (6th Cir. 1998) (citing *EEOC v. Wooster Brush Co. Employees Relief Ass'n*, 727 F.2d 566, 579 (6th Cir. 1984)). Although prejudgment interest is typically not punitive, an excessive prejudgment interest rate would over-compensate an ERISA plaintiff, thereby transforming the award of prejudgment interest from a compensatory damage award to a punitive one in contravention of ERISA's remedial goal of simply placing the plaintiff in the position he or she would have occupied but for the defendant's wrongdoing. See *Hizer v. General Motors Corp., Allison Gas Turbine Div*., 888 F. Supp. 1453, 1463 (S.D. Ind. 1995). Similarly, an exceedingly low prejudgment interest rate fails to make the

---

[1] While it does not appear to the Court that Pfenning can show that his condition deteriorated fast enough for him to qualify for long-term disability payments, that question is not before the Court.

plaintiff whole by inadequately compensating him or her for the lost use of money. See id. Consequently, utilization of an interest rate that is either excessive or inadequate frustrates ERISA's remedial scheme. *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 618 (6th Cir. 1998). The award of interest must not be punitive in nature, but rather should compensate the affected participants for lost interest they could have earned if the money had not been improperly withheld. *Cage v. Gen. Motors Defined Ben. Salaried Plan*, 98 F. Supp. 2d 803, 810 (E.D. Mich. 1999) (citing *Ford*, 154 F.3d at 618).

Utilizing Ohio's prejudgment method as stated in ORC 1343.03, the Court awards prejudgment interest at a rate of 3% for 2014; 3% for 2015; 3% for 2016; and 4% for 2017.

## IV. Conclusion

Plaintiff Douglas Pfenning's Motion for an Award of Attorney's Fees and Costs, Doc. 33, is **GRANTED**. Plaintiff is **ORDERED** within 20 days to submit to the Court a proposed judgment order awarding fees and costs in the amount of $121,267.00 and prejudgment interest at a rate of 3% for 2014; 3% for 2015; 3% for 2016; and 4% for 2017, and simultaneously to inform the Court, pursuant to Local Rule 7.3, whether there will be an objection contesting the calculations or form of the proposed order. Any objection will be due within 20 days of filing of the proposed order.

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, October 19, 2017.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE